## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **INGELA SOLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **SOLITUDE RIDGE JUDGMENT LLC,** | ) | |
| | ) | |
| **Intervenor,** | ) | **Civil Action No. 1991-0212** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOHN WARLICK,** | ) | |
| | ) | |
| **Defendant/Counterclaimant** | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALOY NEILSON, and** | ) | |
| **HONO GORDA, INC.,** | ) | |
| | ) | |
| **Third-Party Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **DR. PAUL POWERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1995-0084** |
| | ) | |
| **HONO GORDA, INC. and EINAR** | ) | |
| **HANSEN, Individually and as Agent** | ) | |
| **of HONO GORDA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Attorneys:**

**Ingela Soly,** *Pro Se*
Ringoes, NJ
　　　　*For Plaintiff (1991-cv-0212)*

**Charles E. Lockwood, Esq.,**
St. Croix, U.S.V.I.
>    *For Intervenor Solitude Ridge Judgment, LLC*
>    *(1991-cv-0212)*

**Diane T. Warlick, Esq.,**
East Berlin, PA
**Bernard C. Pattie, Esq.,**
St. Croix, U.S.V.I.
>    *For Defendant, Counterclaimant, Third-Party Plaintiff*
>    *John Warlick (1991-cv-0212)*

**Kevin A. Rames, Esq.,**
St. Croix, U.S.V.I.
>    *For Third-Party Defendants Aloy Neilson and*
>    *Hono Gorda, Inc. (1991-cv-0212)*

**Michael A. Joseph, Esq.,**
St. Croix, U.S.V.I.
>    *For Plaintiff Paul Powers (1995-cv-0084)*

**Richard H. Hunter, Esq.,**
St. Croix, U.S.V.I.
**Joshua Evan Tate, Esq.,**
St. Croix, U.S.V.I.
>    *For Defendant Einar Hansen (1995-cv-0084)*


## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Relief from Judgment Pursuant to Rule 60 Fed. R. Civ. Pro.," filed by Defendant/Counter-Claimant/Third-Party Plaintiff John Warlick ("Warlick"). (Dkt. No. 294 in 91-cv-212; Dkt. No. 260 in 95-cv-84). Warlick asks the Court to vacate its Order entered on March 31, 2014 (Dkt. No. 254 in 95-cv-84)[1] which denied his "Motion to Alter or Amend Judgment Pursuant to Rule 59(e) FRCP and to

---

[1] For ease of reference, the Court will refer to docket numbers in Case No. 95-cv-84, unless the filing appears only in Case No. 91-cv-212.

Dismiss the Case with Prejudice." For the reasons that follow, the Court will deny Warlick's Motion.

## I.  BACKGROUND

A detailed history of this case, spanning over two decades, was set forth in the Court's March 31, 2014 Memorandum Opinion (Dkt. No. 255) and will not be repeated here. The following summary provides the context in which the Court assesses the current Motion.

This lawsuit began over twenty years ago when Ingela Soly sued John Warlick for defaulting on a promissory note and mortgage secured by Plot 16BA of Estate Coakley Bay, St. Croix (the "Property"). On December 4, 1997, the Court entered an Amended Judgment of Debt and Foreclosure against Warlick in the principal amount of $300,000.00 plus interest and ordered the Property sold at public auction. (Dkt. No. 124). Solitude Ridge Judgment, LLC ("Solitude") subsequently became the assignee of the Amended Judgment and was substituted as the party plaintiff. (Dkt. No. 256 in 91-cv-221). The Property was sold at a Marshal's Sale on October 1, 2007; Solitude purchased the property for $200,000.00; and the Court entered an Order Confirming Sale on October 31, 2007. (Dkt. No. 189 in 95-cv-84). On December 10, 2007, Solitude filed a "Motion for Order Confirming Sale and Deficiency Judgment," indicating that the sale price of the Property was insufficient to fully satisfy Solitude's judgment against Warlick. Solitude sought a deficiency judgment for the unpaid balance. (Dkt. No. 267 in 91-cv-212). For some unexplained reason, that motion was terminated on the Court's electronic case filing system without a ruling.

On May 1, 2008, Solitude filed a "Motion to Correct Order Confirming Sale Dated October 31, 2007 Nunc Pro Tunc," seeking to amend the October 31, 2007 Order Confirming Sale to include a deficiency judgment against Warlick for the remaining balance of its judgment.

(Dkt. No. 190). The Court granted that motion in an Amended Order, and assessed a deficiency judgment against Warlick in the amount of $494,965.05. (Dkt. No. 191). Warlick then moved to vacate the Amended Order Confirming Sale alleging, *inter alia*, that he had not been served with the Motion to Amend. The Court granted Warlick's motion. (Dkt. No. 197). On October 1, 2010, the Court issued an Order determining that Solitude's deficiency judgment would be based on the fair market value of the property. (Dkt. No. 221). After further briefing, the Court issued an Order on August 17, 2011 which revised its earlier methodology for calculating the deficiency judgment—finding that the appropriate procedure was to calculate the deficiency according to the actual sale price—and held that the outstanding deficiency judgment as of August 11, 2011 was $604,181.94. (Dkt. No. 242).

Warlick then filed a motion to amend the August 17, 2011 judgment pursuant to Fed. R. Civ. P. 59(e). (Dkt. No. 279 in 91-cv-212). The Court denied the motion on March 31, 2014. (Dkt. No. 255). The Court also denied Warlick's Motion to Quash the Writ of Execution executed in November 2012. *Id.*

On August 5, 2014, Warlick filed a "Motion for Relief from Judgment Pursuant to Rule 60 Fed.R.Civ.Pro." asking the Court to reconsider and vacate the March 31, 2014 Order. (Dkt. No. 260). Warlick first seeks relief from judgment pursuant to Fed. R. Civ. P. 60(b)(4) and 60(b)(6). He then notes that, if the Court does not find that "extraordinary circumstances justify vacating the judgment, Defendant, in the alternative, moves pursuant to Rule 60(b)(1) to vacate the Order[] for excusable neglect." *Id.* at 4 n.6. Solitude has opposed the Motion, arguing that the Court has already rejected Warlick's arguments for relief from judgment; that an attorney's failure to file a timely motion to reconsider does not constitute excusable neglect nor an

4

exceptional circumstance justifying relief from judgment; and that it would be unfair to allow Warlick to frustrate the judgment enforcement process by granting this motion. (Dkt. No. 261).

For the reasons that follow, the Court finds that relief is not available to Warlick on any of the grounds asserted.

## II.  DISCUSSION

### A.  Standard for Rule 60(b)

Federal Rule of Civil Procedure 60(b) provides:

> Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) Mistake, inadvertence, surprise, or excusable neglect;
>      * * *
> (4) The judgment is void;
>      * * *
> (6) Any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  The Third Circuit views Rule 60(b) motions as "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Oat v. Sewer Enters., Ltd.,* 584 F. App'x 36, 41 (3d Cir. 2014) (quoting *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991)).  A movant under Rule 60(b) bears a "heavy burden" to win such "extraordinary relief." *United States v. Meehan*, 600 F. App'x 51, 54 (3d Cir. 2015) (citing *Bohus*, 950 F.2d at 930).

### B.  Analysis

#### 1.  Rule 60(b)(4)

Following the order of Warlick's arguments, the Court will first address his request for relief under Rule 60(b)(4). Warlick seeks relief from the Court's March 31, 2014 Order on the ground that the Order was void for lack of jurisdiction and therefore must be vacated. He claims that after the judgments in these cases were entered in April 1997 in Case No. 91-cv-212 and in

December 1997 in Case No. 95-cv-84, "[t]here was nothing of substance left for the court to do"; no one asked for the cases to be reopened; and thus, the Court was left without jurisdiction to enter any further orders relating to substantive legal issues. (Dkt. No. 260 at 6-7). He concludes that, without subject matter jurisdiction, all substantive orders entered after the 1997 judgments—including the March 31, 2014 Order—are null and void, which provide grounds for granting his Rule 60(b)(4) Motion. *Id.* at 7.

Rule 60(b)(4) "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). "Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.* (quoting *Nemaizer v. Baker,* 793 F.2d 58, 65 (2d Cir. 1986) and citing *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661-62 (1st Cir. 1990) ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and . . . only rare instances of a clear usurpation of power will render a judgment void.") (brackets and internal quotation marks omitted)).

This Court has twice addressed and rejected Warlick's jurisdictional arguments in which he claimed that, after the Court entered certain Orders, it was divested of jurisdiction and therefore subsequent orders were void. In its August 17, 2011 Order granting Solitude's Motion for Reconsideration of the Court's October 1, 2010 Order, the Court found without merit Warlick's argument that the October 31, 2007 Order confirming the foreclosure sale was a "final order that divested this Court of jurisdiction over this case, including Solitude's request for a deficiency judgment." (Dkt. No. 242 at 10). The Court wrote:

6

As stated by the Supreme Court over a century ago, this Court retains jurisdiction to enforce its own judgments:

> [T]he rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree . . . [T]he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied.

> *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867); *see also Bryan v. BellSouth Communications, Inc.,* 492 F.3d 231, 236 (4th Cir. 2007) ("As a general rule, courts have jurisdiction to enforce their own judgments."); *McKee-Berger-Mansueto, Inc. v. Board of Educ. of Chicago*, 691 F.2d 828, 831 (7th Cir. 1982) ("[T]here can be little doubt that the district court, having had jurisdiction over the original [] suit between MBM and the Board, possessed jurisdiction to enforce the judgment it rendered." (citing *Riggs,* 73 U.S. at 187)); *Gregris v. Edberg*, 645 F. Supp. 1153, 1157 (W.D. Pa. 1986), *aff'd*, 826 F.2d 1055 (3rd Cir. 1987) ("[T]he court certainly does have the authority and the duty to protect and effectuate its judgment."); *Kashi v. Gratsos,* 712 F. Supp. 23, 25 (S.D.N.Y. 1989) ("A federal district court's jurisdiction to enforce its judgments by conducting supplemental proceedings and issuing orders is an inherent and 'long recognized' authority.") (citations omitted).

*Id.* at 11. The Court explained that, even assuming that the October 31, 2007 Order Confirming Sale was a "final order," as Warlick had argued, that would not deprive the Court of jurisdiction to enter a deficiency judgment or other Orders because the Court retained jurisdiction to enforce its judgments. The Court opined that "a deficiency judgment is but a means of executing on the unsatisfied portion of a debt judgment obtained as the result of a foreclosure," and that the Court had "jurisdiction to enter a deficiency judgment on Solitude's behalf even though the foreclosure sale has been confirmed." *Id.* at 11-12.

Warlick asserted a similar jurisdictional argument in his motion seeking relief under Rule 59(e). In its March 31, 2014 Memorandum Opinion and Order, the Court rejected Warlick's assertion that the April 8, 1997 docket entry indicating that the case was "Closed Dismissed Settled" (Dkt. No. 200 in 91-cv-212) caused the Court to lose jurisdiction. The Court noted that Warlick had availed himself of the Court's jurisdiction in the years after 1997 when he sought

Case: 1:95-cv-00084-WAL-GWC   Document #: 266   Filed: 09/30/15   Page 8 of 20

various types of relief, and that he cited no support for his novel proposition that a court is divested of jurisdiction to enforce its judgments. (Dkt. No. 255 at 15-16 n.11). Here, too, the Court cited *Riggs v. Johnson County* as authority for the well-established principle that a court retains jurisdiction to enforce a judgment it has rendered. *Id.*

Now, in his Rule 60(b)(4) Motion, Warlick again asserts that the April 8, 1997 "judgment" in 91-cv-212, and the December 3, 1997 Amended Judgment in 95-cv-84,

> set the amount of debt and ordered the secured property to be sold at auction. There was nothing of substance left for the court to do. Since no one asked for the case to be re-opened within the jurisdictional time[ ] limit[,] these orders became final in 1997 without any further action by the court. The court was left without jurisdiction to amend its judgment, enforce an agreement, alter an Order to confirm a sale or indeed to enter any further orders relating to substantive legal issues.

(Dkt. No. 260 at 6-7). Although Warlick cites case law that describes a final judgment as an order that ends litigation on the merits, leaving nothing for the court to do but "*execute the judgment,*" *id.* at 6 (emphasis added), he apparently does not consider the Orders of the Court entered after 1997 as "execut[ing] the judgment."

Once again, the Court reiterates the reasoning set forth in its August 17, 2011 Order and its March 31, 2014 Memorandum Opinion: the Court was not divested of jurisdiction following entry of the Amended Judgment in December 1997, or by the April 1997 docket entry, or by any other subsequently-entered Order in which the Court determined how the Amended Judgment should be executed. The Court unquestionably has the authority to enforce its 1997 Amended Judgment—the issue that has marked the litigation in this case since the entry of that judgment. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purpose for which it was conferred by the Constitution.'") (quoting *Riggs*, 6 Wall at 187).

8

In his Motion, Warlick also appears to have fashioned a new "jurisdictional" argument—
that when parties have settled a case, "the court does not have jurisdiction to enforce the terms of
the settlement agreement simply because it had jurisdiction to decide the underlying action."
(Dkt. No. 260 at 5) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378
(1994)). While *Kokkonen* stands for that proposition, it does not apply here. Warlick has
provided no evidence and supporting argument of the kind of "settlement agreement" between
the parties that resolved the merits of this case and divested the Court of jurisdiction with regard
to enforcement proceedings.[2] *See Meehan*, 600 F. App'x at 54 (movant bears a "heavy burden"
to win Rule 60(b) relief); *see also Mackey v. United States*, 221 F. App'x 907, 910 (11th Cir.
2007) (stating that movant bears the burden of showing that a judgment is void under Rule
60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter, since movant bears
the "burden of establishing their right to relief from the judgment against them"). Warlick's
failure to carry his burden in this regard is fatal to his claim.

In sum, Warlick's unsupported and previously-rejected theories that the Court lacked
jurisdiction to enter Orders in this case subsequent to 1997 do not provide a basis for granting
Rule 60(b)(4) relief. Nor has Warlick produced any concrete support for the proposition that

---

[2] Warlick attempts to cobble together an argument regarding the Court's purported lack of
jurisdiction to enforce a settlement agreement by simply mentioning an April 8, 1997 docket
entry in 91-cv-212 and a January 2001 docket entry in 95-cv-84, both of which reference a
settlement. However, Warlick provides no details concerning the alleged settlements; how they
resolved the case; and why the Court was divested of jurisdiction. These omissions are
particularly noteworthy since litigation continued apace thereafter. Warlick's mere reference to
these eighteen and fifteen year-old docket entries, respectively, does not bring this matter within
the realm of the "rare" or "exceptional" case for which Rule 60(b)(4) relief is reserved. *Espinosa*,
559 U.S. at 271. In addition, Solitude notes that, in 1997, the parties entered into a stipulation
that resolved the litigation, and that stipulation resulted in the December 1997 entry of the
Amended Judgment of Debt and Foreclosure. (Dkt. No. 261, citing Dkt. No. 220). Solitude
maintains that it is "simply enforcing the Amended Judgment entered by this Court as a result of
the parties' Stipulation." *Id.* at 2.

there was a settlement agreement reached in this case that resolved the merits, after which the Court lost jurisdiction for enforcement purposes.[3] Warlick has simply failed to establish that this Court lacked an "arguable basis for jurisdiction," *Espinosa*, 559 U.S. at 271, or that there was a "total want of jurisdiction" in either case, *Boch Oldsmobile, Inc.*, 909 F.2d at 662, which would provide grounds for Rule 60(b)(4) relief. Because this is neither the "rare instance" nor the "exceptional case" for which Rule 60(b)(4) relief has been reserved, *Espinosa*, 559 U.S. at 271, Warlick's Motion on this ground must fail.

### 2.  Rule 60(b)(1), Rule 60(b)(6)

Warlick also seeks relief under Rule 60(b)(6)—or, in the alternative, Rule 60(b)(1)—on the ground that, at the time the Court issued its March 31, 2014 Memorandum Opinion and Order, his attorney was "seriously ill and hospitalized. . . intermittently through April 21, 2014." (Dkt. No. 260 at 8). Warlick provides a time-line of his counsel's illness from February 5, 2014 through April 21, 2014, during which she underwent surgery three times. *Id.* at 9. Warlick adds that counsel's recovery was slow and that she could not review e-mails through mid-May 2014. *Id.* When counsel reviewed the "hundreds of e-mails" that arrived during her illness, she did not see the March 31, 2014 Order sent to her by the Court through its CM/ECF system. *Id.* Warlick claims that counsel did not see the notification because she was medicated, and the medication affected her alertness. *Id.* At the same time, Warlick questions whether counsel received the CM/ECF notification related to the March 31, 2014 Order in the first place. In this regard, he states that counsel "did not see any Order from the Court in this matter, if it was even there. Reviewing past emails on the computer and on the email server does not indicate receipt of any Order from this court." *Id.*

---

[3] Warlick has not argued, nor is there any credible basis for suggesting that Warlick has been deprived of "notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271.

Warlick goes on to say that counsel first saw the March 31, 2014 Order on July 6, 2014 when she checked the docket of the case online. Counsel filed the instant Rule 60(b) motion on August 5, 2014, a month later. Because "the 30 day window to file a notice of appeal [the March 31, 2014 Order] ha[d] expired" while counsel was ill, Warlick seeks relief under Rule 60(b)(6) claiming his counsel's illness constitutes "exceptional circumstances" permitting such relief. *Id.* at 10. In the alternative, he seeks relief under Rule 60(b)(1), asserting that the circumstances here constitute "excusable neglect." *Id.* at 4, n.6.

The Supreme Court has held that Rule 60(b)(1) and Rule 60(b)(6) are "mutually exclusive. . . . To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless for the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1), and the party's neglect must be excusable." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (internal citations omitted). The *Pioneer* Court explained that excusable neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. Because of the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his or her control is not considered to constitute 'neglect.'" *Id.* at 394.

Warlick provides two reasons for not timely challenging the Court's March 31, 2014 Order: (1) his counsel's illness and (2) his counsel's failure to notice the e-mail notification of the Memorandum Opinion and Order, with the suggestion that the Court may be at fault for not sending it at all. The first reason, counsel's illness and hospitalization—albeit not documented— may constitute the kind of extraordinary circumstances that warrant review under rule 60(b)(6). On the other hand, failure to notice e-mail notifications sent by the Court to the attorney's

address would indicate some fault on the part of the attorney, thus pointing to an analysis under Rule 60(b)(1). Moreover, even assuming, *arguendo*, that the e-mails were not received, Warlick provides no explanation for the one month delay between the time that his attorney allegedly noticed—on July 6, 2014—that the March 31, 2014 Order was on the docket, and the eventual filing of the Rule 60(b) motion on August 5, 2014. The failure to observe the e-mail notifications, and the unexplained delay of one month between noticing the Order on the docket and filing the Rule 60(b) Motion, suggest some fault on the part of Warlick's counsel for not responding earlier. Because the reasons offered by Warlick suggest both possible lack of fault followed by fault on the part of his attorney, and that counsel is therefore partly to blame for the delay, the Court will assess this motion under Rule 60(b)(1) rather than Rule 60(b)(6).[4] *See, e.g.,*

---

[4] Many courts that have considered an attorney's illness as an excuse for not filing an appeal or other document have done so under Rule 60(b)(1) rather than Rule 60(b)(6), based on the particular facts presented. *See Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co.*, 750 F.3d 1, 5 (1st Cir. 2014) (affirming district court's denial of relief under Rule 60(b)(1) based on attorney's alleged illness); *Lemoge v. United States*, 587 F.3d 1188, 1197-98 (9th Cir. 2009) (finding that medical problems were valid reason for delay in context of Rule 60(b)(1)); *Buck v. U.S. Dep't of Agric, FHA,* 960 F.2d 603, 606 (6th Cir. 1992) (holding that attorney's sudden illness did not satisfy "excusable neglect" provision of Rule 60(b)(1)); *Maciejewski v. Community Bank & Trust Co.,* 2011 WL 6294532, at *2 (M.D. Pa. Dec. 15, 2011) (finding delay in responding to filing due to severe mental illness supported excusable neglect finding under Rule 60(b)(1)). However, some courts have found that if an attorney's mental or physical illness is extreme, relief may be available under Rule 60(b)(6). *See, e.g., United States v. Cirami,* 563 F.2d 26, 34 (2d Cir. 1977) (finding that attorney's psychological disorder, causing him to "constructive[ly] disappear[]" from a case, justified Rule 60(b)(6) relief); *Benjamin v. Lockhart*, 1996 WL 44197, at *2-3 (E.D. La. Feb. 2, 1996) (recognizing that an attorney's debilitating illness that caused his health to deteriorate "to the point that he was virtually unable to practice law" constituted a compelling reason for granting Rule 60(b)(6) relief). In *Klapprott v. United States,* 335 U.S. 601 (1949), cited by Warlick, the Supreme Court found extraordinary circumstances justifying relief under Rule 60(b)(6) because the plaintiff was destitute, ill, and had been held in prison for over six years, which prevented him from responding to a default judgment motion in a denaturalization proceeding. *Id.* at 614-15. The absence of documented details as to the severity of counsel's illness in the instant matter prevents an assessment of the aptness of the respective cases. In any event, even if the Court considered counsel's three (undescribed) surgeries in the course of three and one-half months as sufficiently extreme to warrant a Rule 60(b)(6) analysis, the Court would still have to take account of the fact that the

*N.J. Building Const. Laborers Dist. Council v. Robert Deforest Demolition Co., Inc.,* 2012 WL 5304700, at *2 (D.N.J. Oct. 25, 2012) (refusing to find party "faultless in the delay" so as to permit analysis under Rule 60(b)(6), when party was aware of judgment entered, did not even make "a request for an extension of time to respond in light of the circumstances," and rejecting motion on Rule 60(b)(1) grounds).

The test for "excusable neglect" is equitable and requires the Court to weigh the "'totality of the circumstances.'" *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007) (quoting *Welch & Forbes, Inc. v. Cendant Corp.*, 234 F.3d 166, 171 (3d Cir. 2000)). In particular, the Court must consider: "(1) the danger of prejudice to the other party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay—and whether it was within the movant's control; and (4) whether the movant acted in good faith." *Id.* at 194. "[C]ourts in the Third Circuit have routinely rejected Rule 60(b) requests where the movant fails to provide evidence in support of their application for relief." *Otis v. Chesapeake Appalachia, LLC*, 2012 WL 1657930, at *4 (M.D. Pa. May 11, 2012) (citing cases).

### a. Danger of Prejudice to Non-Moving Party

With regard to the first factor—the danger of prejudice to the non-moving party—the Court finds that Solitude would suffer substantial prejudice if the Court were to grant Warlick's Rule 60(b)(1) Motion. Solitude has been attempting to collect on its deficiency judgment for

---

illness does not tell the entire story of the delay in challenging the March 31, 2014 Memorandum Opinion and Order. The period of time between when counsel returned home from the hospital (April 21, 2014) and when she filed her Rule 60(b) motion (August 5, 2014) would also have to be assessed. Because counsel was not faultless in this latter time frame, the analysis would still proceed under Rule 60(b)(1).

many years. This Court issued an Amended Judgment eighteen years ago; the Property at issue was sold at a Marshal's sale eight years ago; and the Court confirmed that Solitude was entitled to a deficiency judgment four years ago. After the Court entered its August 2011 Order—which determined how the deficiency judgment would be calculated, and which resolved the last remaining issue in this case—Warlick challenged that Order not by attacking its substantive holdings, but by raising meritless jurisdictional and other arguments in a Rule 59(e) motion that were rejected by this Court. Similarly, in his current Rule 60(b) Motion, Warlick has raised the same meritless jurisdictional challenges to the March 31, 2014 Memorandum and Order that he raised in his Rule 59(e) motion. Thus, by filing his Rule 60(b) Motion, Warlick is essentially seeking reconsideration of the denial of his Rule 59(e) motion—a motion he initially described as the "functional equivalent of a motion of reconsideration." (Dkt. No. 278 in 91-212).

The Court concludes that further litigation of this nature serves only to prolong the time when Warlick must comply with the Amended Judgment and the Order determining how the deficiency judgment is calculated. Further delay occasioned by repetitive, meritless, non-substantive arguments in this twenty-plus year long litigation would cause Solitude to suffer substantial prejudice due to the continuing failure to achieve final resolution and the relief to which it is entitled, in addition to having to expend additional time and attorney's fees in further litigation.

Accordingly, the Court finds that this factor weighs heavily against Warlick's request for relief under Rule 60(b)(1).

### b.  Length of Delay and Potential Impact on Judicial Proceedings

With regard to the length of the delay and its potential impact on judicial proceedings, the Court finds that the length of delay between the March 31, 2014 Order and the filing by Warlick

of his Rule 60(b) Motion on August 5, 2014 was not extensive, and weighs in Warlick's favor. However, the Court finds that the potential impact on judicial proceedings weighs against granting Rule 60(b)(1) relief. As indicated above, the merits in this case have been fully litigated and the issues resolved. Prolonging judicial proceedings under such circumstances would waste the resources of both the parties and the Court.

Warlick advances no substantive arguments as to why he should be relieved from the findings in the March 31, 2014 Memorandum Opinion and Order, and the Court has rejected his jurisdictional challenges. Warlick's repeated motions for reconsideration simply delay the final resolution of this matter, including the time within which he must comply with the deficiency judgment. As a result, in its totality, this factor weighs against the Court granting Warlick's request for Rule 60(b)(1) relief.

### c.   Reason for the Delay and Whether It Was Within Movant's Control

The Court finds that the third factor—the reason for the delay and whether it was within the movant's control—tips against Warlick.

Taking at face value Warlick's representations regarding his counsel's illness, the Court finds that this illness was outside of counsel's control, and suffices as a justification for why counsel did not challenge the March 31, 2014 Order between March 31, 2014 and mid-May 2014. The reason for this part of the delay weighs in favor of the Court granting Rule 60(b)(1) relief.

However, the Court finds that what occurred after mid-May 2014 was within counsel's control and weighs against granting relief. Counsel waited an additional three months—from mid-May, 2014 when she apparently felt well enough to review her e-mails, to August 5, 2014, to file the instant Rule 60(b) motion. Warlick states that counsel did not see the e-mail notifying

15

her of the Court's March 31, 2014 Memorandum Opinion and Order, "if it was even there." Asserting that counsel's e-mail server "does not indicate receipt of any Order from this Court" (Dkt. No. 260 at 9), he suggests that counsel may never have received notice of the Memorandum Opinion and Order denying Warlick's Rule 59(e) Motion via CM/ECF—the Court's Case Management/Electronic Case Filing system that electronically transmits all Court filings to counsel when they are entered on the docket.

The Court rejects Warlick's suggestion that counsel never received the CM/ECF notification of the March 31, 2014 Memorandum Opinion and Order. Local Rule of Civil Procedure 5.4(j) provides that "[e]lectronic transmission of the Notice of Electronic Filing constitutes the notice required by Federal Rule of Civil Procedure 77(d)." LRCi 5.4(j). The docket reports in cases 91-cv-212 and 95-cv-84 indicate that the March 31, 2014 *Memorandum Opinion* was sent to the e-mail on file for Warlick's counsel on March 31, 2014 at 8:51 p.m. in Case No. 91-cv-212, and at 8:53 p.m. in Case No. 95-cv-84. The March 31, 2014 *Order* was sent to the e-mail on file for Warlick's counsel at 8:49 p.m. in Case No. 91-cv-212 and at 8:52 p.m. in Case No. 95-cv-84. Thus, a total of *four* e-mails were sent to counsel at her e-mail address on file, notifying her of the entry of the March 31, 2014 Memorandum Opinion and Order.

Nonetheless, Warlick asks the Court to accept the suggestion contained in an unsworn memorandum that, although four notifications were sent to counsel's e-mail address on file, she never received any of them. *See Richards v. Nolind & Assocs. W. Indies, Inc.*, 2010 WL 4226735, at *3 (D.V.I. Oct. 26, 2010) (rejecting as "nonsensical" an attorney's contention that she did not receive notice of a CM/ECF filing, noting that according to Local Rule 5.4, once a document is filed on CM/ECF, that "constitutes service on the registered users.") (citing *Ash Trucking Co. v. Global Indus. Techns., Inc.*, 2008 WL 437028, at *3 (W.D. Pa. Feb. 14, 2008)).

The Court is also apparently being asked to accept, without question, the seemingly illogical proposition that, once counsel determined that CM/ECF e-mails in this case were not found on her server, she did not inform the Court of her failure to receive them or otherwise attempt to address and resolve this substantial problem. Under the circumstances here, the suggestion that counsel never received the e-mail notification of this Court's March 31, 2014 Memorandum Opinion strains credulity.

The Court deems more credible the likelihood that counsel failed to notice the e-mails. Such failure to notice the four e-mails must be attributed to inattention—*i.e.*, negligence. *See Boice ex rel. Rought v. Tyler Mem. Hosp.*, 2007 WL 2903424, at *5 (M.D. Pa. Sept. 28, 2007) ("Negligence consists of inattention or inadvertence[.]") (citing Pennsylvania law); *De La Cruz v. Cohen (In re Cohen)*, 191 B.R. 599, 605 (D.N.J. 1996) (describing "negligence" as being "characterized as mere thoughtlessness or inadvertence or simple inattention"); *cf. Tutein v. Parry*, 2006 WL 3842108, at *2 n.2 (V.I. Super. Ct. Oct. 24, 2006) (contrasting gross negligence with ordinary negligence by stating that gross negligence "signifies more than ordinary inadvertence or inattention").

If counsel was reviewing e-mails while she was medicated, as Warlick contends, which caused her to overlook the four CM/ECF notifications, that too would indicate negligence—as counsel was working when she was purportedly hampered by the effects of medication, and was more likely to miss important matters. Working in such a state suggests some degree of fault on the part of counsel.[5]

---

[5] Counsel provides no evidence—either her own affidavit or a doctor's affidavit—verifying that she was taking medication, for how long, and how it affected her concentration. All that is before the Court is counsel's unverified, general assertion that when she finally reviewed the e-mails that arrived when she was ill, she "was still under medication that affected her alertness." (Dkt. No. 260 at 9). *See Otis*, 2012 WL 1657930, at *4 (citing cases that deny Rule 60(b) relief

In any event, even assuming non-receipt of the e-mails, Warlick offers no explanation why counsel waited an additional month to file her Rule 60(b) motion after she learned on July 6, 2014 that the March 31, 2014 Memorandum Opinion and Order had been issued. Nor is there any explanation for why counsel did not file any other submission with the Court to alert the Court of the existing circumstances.

In sum, the Court finds that the third factor weighs against Warlick, as the element favoring him (counsel's illness) is outweighed by counsel's negligence in not seeing the e-mails, the lack of credence that can be given to Warlick's suggestion that counsel may never have received the e-mails, and the unexplained month between counsel's acknowledgment that she saw the March 31, 2014 Memorandum Opinion and Order and the filing of the Rule 60(b) Motion with the Court.

### d.  Whether the Movant Acted in Good Faith

With regard to the final factor—whether the movant acted in good faith—the Third Circuit has stated that a party acts in good faith where it acts with "reasonable haste to investigate the problem and to take available steps toward a remedy." *Welsh & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. PRIDES Litig.)*, 235 F.3d 176, 184 (3d Cir. 2000). The

---

because the moving party failed to support its application with the presentation of facts and evidence). Rule 1.16 of the Model Rules of Professional Conduct provides that if a lawyer's "physical or mental condition materially impairs the lawyer's ability to represent the client," the lawyer "shall withdraw from the representation of a client." *See also Carcello v. TJX Cos. Inc.,* 192 F.R.D. 61, 64 (D. Conn. 2000) (citing Rules 1-1 through 1.4 of Rules of Professional Conduct and noting that "if an illness interferes or potentially interferes with counsel's competence, diligence, and effective representation of a client, the prudent and professionally responsible attorney must make alternative arrangements for his clients and withdraw from their representation until such time as he is able to provide competent, diligent, and effective representation."). Warlick described his counsel as a sole practitioner. If a sole practitioner becomes ill and cannot work on her cases or is hampered by lingering effects of illness, such as medication, it becomes even more important to make alternate arrangements to ensure that nothing important is overlooked during the illness and recovery period.

Third Circuit has also addressed the "good faith" factor by finding that "there is no evidence [that the movant] acted in bad faith." *Nara*, 488 F.3d at 194.

There is no evidence that Warlick acted in bad faith. Still, as set forth above, the Court does not credit Warlick's suggestion that counsel never received the four CM/ECF notifications of the March 31, 2014 Memorandum Opinion and Order. The Court also concludes that counsel did not act with "reasonable haste" once she received notice of the March 31, 2014 filings. The Court thus finds that this factor is neutral, weighing neither for nor against granting Warlick's Rule 60(b) Motion.

### e. Totality of the Circumstances

Three of the excusable neglect factors weigh against granting Warlick's motion, and the fourth is neutral. Assessing these factors under the totality of the circumstances, and considering the equities in this case, the Court will deny Warlick relief under Rule 60(b)(1).

### 3. Motion for Reconsideration

Finally, to the extent that Warlick's Rule 60(b) Motion could be construed as a Motion for Reconsideration, he has not satisfied the requirements for such relief. *See Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (stating that a Rule 60(b) motion may be a motion for reconsideration).

> The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *N. River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995).

*Lazaridis v. Wehmer,* 591 F.3d 666, 669 (3d Cir. 2010). "'Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly.'"

*Lusick v. City of Phila.*, 2013 WL 1187064, at *1 (E.D. Pa. Mar. 21, 2013) (quoting *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995)).

Warlick has cited no change in controlling law, no new evidence, and no circumstances constituting manifest injustice as grounds for relief. Rather, as the Court previously found in denying Warlick's earlier Rule 59(e) motion, his current Motion "demonstrates his dissatisfaction with the District Court's decision[s]," and a motion for reconsideration "does not provide relief from a judgment for such a reason[.]" *Grossberger v. Ruane,* 491 F. App'x 309, 311 (3d Cir. 2012); *see also Smith v. Evans*, 853 F.2d 155, 158 (3d Cir. 1988) (holding that a Rule 60(b) motion is not a substitute for appeal or a vehicle for needlessly repetitive reconsideration of previously-rejected legal theories). Thus, if deemed to be a Motion for Reconsideration, Warlick's Motion will be denied.

## III.   CONCLUSION

This is not an extraordinary case that warrants the extraordinary remedy of Rule 60(b) relief or reconsideration. *Sewer Enters., Ltd.,* 584 F. App'x at 41. This case has been ongoing for over twenty years. It is time for litigation to cease and to give effect to the "finality and repose of judgments." *Mayberry v. Maroney*, 558 F.2d 1159, 1164 (3d Cir. 1977); *see also Kock v. Gov't of the V.I.*, 811 F.2d 240, 246 (3d Cir. 1987) (holding that the "finality of judgments is a sound principle that should not be lightly cast aside"). Accordingly, Warlick's "Motion for Relief from Judgment Pursuant to Rule 60 Fed. R. Civ. Pro.," (Dkt. No. 294 in 91-cv-212; Dkt. No. 260 in 85-84), will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 30, 2015                        _____/s/_____
                                               WILMA A. LEWIS
                                               Chief Judge